UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NICOLE MARTIN,

                     Plaintiff,

v.                                                   5:05-CV-00072
                                                 (FJS/GHL)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                     Defendant.

APPEARANCES:                          OF COUNSEL:

OLINSKY, SHURTLIFF LAW FIRM       HOWARD OLINSKY, ESQ.
*Counsel for Plaintiff*
300 S. State Street
5th Floor
Syracuse, New York 13202

HON. GLENN T. SUDDABY          WILLIAM H. PEASE, ESQ.
United States Attorney for the       Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[2]

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental

---

[1]  Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

[2]  This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Security Income ("SSI") on October 30, 2001.[3]  (Administrative Transcript ("T") at 16, 53-55, Dkt. No. 4)  The application was denied initially.  (T. at 23-28.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on July 8, 2003.  (T. at 29, 207-27.)  On October 14, 2003, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 16-22.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 13, 2004.  (T. at 6-8.)  Plaintiff commenced this action on January 21, 2005.  (Dkt. No. 1.)

**B.     The Contentions**

Plaintiff makes the following claims:

(1)     The Commissioner erred in determining that the Plaintiff's obesity was not a severe impairment.  (Dkt. No. 5 at 6-7.)

(2)     The Commissioner erred in determining that the Plaintiff was capable of sedentary work.  (Dkt. No. 5 at 13-16.)

(3)     The Commissioner erred in failing to give controlling weight to the opinion of a treating source.  (Dkt. No. 5 at 7-11.)

(4)     The Commissioner erred in finding that the Plaintiff's subjective complaints were only partially credible.  (Dkt. No. 5 at 11-13.)

(5)     The Commissioner erred in solely utilizing the Medical Vocational Guidelines

--------

[3]  Although the ALJ stated the date of the filing was October 15, 2001, the application was signed on October 30, 2001.

("Grids") to determine that the Plaintiff was not disabled when non-exertional impairments existed.  (Dkt. No. 5 at 16.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  Dkt. No. 6.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. §§ 404.1520 & 416.920 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the

claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

## B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably

doubts whether the proper legal standards were applied, even if the decision appears to be

supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth

the crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

Cir. 1984).

     A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197

(1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its

interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.

1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on February 18, 1977.  (T. at 53.)  She is a high school graduate and previously worked as a cashier, bus monitor, and resident counselor. (T. at 67, 72.)  Plaintiff alleges disability due to a herniated and bulging disc in the L5-S1 region.  (T. at 66-68.)

## IV.    THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of April 5, 2001; (2) Plaintiff had severe vertebrogenic impairments, but they did not meet or equal a listed impairment; (3) Plaintiff's allegations of disabling symptoms were not credible; (4) Plaintiff had the residual functional capacity ("RFC") to perform the requirements of a full range of sedentary work; (5) Plaintiff could not perform her past relevant work as a cashier, bus monitor, or resident counselor; and (6) based upon Medical Vocational Rules 201.27 and 201.28, a finding of not disabled was directed.  (T. at 17-22.)

## V.    DISCUSSION

### A.    Whether the Commissioner Erred in Failing to Determine That the Plaintiff's Obesity Was a Medically Determinable Severe Impairment

Plaintiff argues that the ALJ erred in failing to consider obesity as a medically determinable severe impairment.  (Dkt. No. 5 at 6-7.)  Defendant contends that the ALJ properly excluded considering obesity as a severe impairment because such a finding would not have been supported by evidence in the record.  (Dkt. No. 6 at 9-10.)

As mentioned above, if a claimant is not engaging in substantial gainful activity, then at step two of the sequential evaluation process a determination must be made as to whether a

medically determinable physical or mental impairment exists.  20 C.F.R. §§ 404.1508 &

416.908; *see also* Social Security Ruling ("S.S.R.") 96-4p, 1996 WL 374187, at *1-2, *Titles II*

*and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional*

*and Nonexertional Limitations* (S.S.A. 1996).  An "impairment must result from anatomical,

physiological, or psychological abnormalities which can be shown by medically acceptable

clinical and laboratory diagnostic techniques . . . . [that] consist[] of signs, symptoms, and

laboratory findings, not only by [a claimant's] statement of symptoms[.]"  20 C.F.R. §§ 404.1508

& 416.908 (2005).

     If a medically determinable impairment exists, a decision must be rendered as to whether

it is a severe impairment that significantly limits the physical or mental ability to do basic work

activities.  (*See* II.A. above).  The ability to do basic work activities is defined as "the abilities

and activities necessary to do most jobs."  20 C.F.R. §§ 404.1521(b) & 416.921(b) (2005).  Basic

work activities which are relevant for evaluating the severity of an impairment include:

     (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching,
     carrying, or handling;
     (2) Capacities for seeing, hearing, and speaking;
     (3) Understanding, carrying out, and remembering simple instructions;
     (4) Use of judgment;
     (5) Responding appropriately to supervision, co-workers and usual work situations;
     and
     (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b) & 416.921(b) (2005); *see Pickering v. Chater*, 951 F. Supp. 418, 424

(S.D.N.Y.1996); *see also* S.S.R. 85-28, 1985 WL 56856, at *3-4, *Titles II and XVI: Medical*

*Impairments That Are Not Severe* (S.S.A. 1985).

     Age, education, and work experience are not evaluated in determining if the impairment

or combination of impairments are severe.  20 C.F.R. §§ 404.1520(c) & 416.920 (c) (2004).  The severity analysis does no more than "screen out de minimis claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above the de minimis level, then further analysis is warranted.  *Id.*  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523 & 416.923 (2004); *Dixon*, 54 F.3d at 1031.

Specifically in regards to obesity, it is not in and of itself a disability.  *See* S.S.R. 02-1p, 2000 WL 33952015, *Titles II and XVI:  Evaluation of Obesity* (S.S.A. 2000); *Guadalupe v. Barnhart*, Civ. No. 04-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005).  Therefore, "[a]n ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working."  *Guadalupe*, 2005 WL 2033380, at *6 (citation omitted); *see also Cruz v. Barnhart*, Civ. No. 04-9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing *Guadalupe*).  Notwithstanding, if an ALJ fails "to explicitly address a claimant's obesity[,]" the determination made by the ALJ will not warrant a remand so long as the "ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff" because it demonstrates that "the claimant's obesity . . . [was] factored into the [ALJ's] decision." *Guadalupe*, 2005 WL 2033380, at *6 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).  Many other jurisdictions have followed this reasoning and held that an ALJ's failure to discuss a claimant's obesity may amount to harmless error.  *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 551-552 (3rd Cir. 2005); *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 410 (6th Cir. 2006) (unpublished opinion); *Golfieri v. Barnhart*, Civ. No. 06-14-B-W, 2006 WL 3531624, at

*6 (D. Me. Dec. 6, 2006); *Zeno v. Barnhart*, Civ. No. 03-649, 2005 WL 588223, at *5 (E.D. Tex. Feb. 4, 2005).

In this case, Plaintiff never asserted obesity as a ground for her disability.  (*See* T. at 66-68, 88-98); *see also Cruz*, 2006 WL 1228581, at *9-10.  Plaintiff's weight was briefly discussed at the hearing, though not in conjunction with how her weight caused any physical limitations.  (T. at 212-213.)  Furthermore, Plaintiff's treating physicians rarely mentioned her obesity in their medical notes and findings.  In any event, when discussing Plaintiff's physical limitations, the ALJ seemed to take into account Plaintiff's obesity issue as well as her back ailment.

On December 5, 2001, Plaintiff's treating physician, Dr. Anthony J. Matan, noted that she had issues with obesity that could, if addressed, help with her back issues.  (T. at 156.)  He recommended physical therapy but did not think she would attend.  (T. at 156.)  Dr. Matan further stated that although Plaintiff believed she was disabled and did not want to work, he encouraged her to return to work, especially given her weight.  (T. at 157.)  He also commented that he was not interested in taking her out of work.  (T. at 157.)  Then, on June 13, 2002, Dr. Matan stated that he did not recommend surgery for Plaintiff's obesity because there were no radicular complaints and no neurological findings.  (T. at 172.)  He again noted that her best option was to return to work, even with restrictions.  (T. at 172.)  Dr. Matan stated that Plaintiff should be restricted to lifting no more than thirty pounds.  (T. at 172.)  Plaintiff was unhappy with the finding but Dr. Matan affirmed that this was his opinion.  (T. at 172.)

On January 17, 2002, a state agency consultant completed a physical RFC assessment and found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and sit for six hours in an eight-hour workday, and push or pull

unlimitedly.  (T. 163.)  The consultant further opined that Plaintiff had occasional postural

limitations but no manipulative, visual, communicative, nor environmental limitations.  (T. at

164-66.)  Subsequently, on July 3, 2003, Dr. Angelo Porcari, another treating physician, stated

that Plaintiff should not lift more than thirty pounds, stand for a prolong period, or push and pull

heavy objects.  (T. at 170).  Dr. Porcari also completed a physical medical source statement the

same day and concluded that Plaintiff could sit for four hours in an eight-hour workday, stand

and/or walk for less than two hours in an eight-hour workday, and lift up to twenty pounds.  (T.

at 188-92.)

Although the ALJ did not explicitly address Plaintiff's obesity, the ALJ utilized the

physical limitations set forth by the treating physicians taken in conjunction with that from the

state agency consultant.  (*See* T. at 17-19.)  Specifically, the ALJ found that Plaintiff could not

lift more than ten pounds occasionally and she could only stand and/or walk for two hours in an

eight-hour workday and sit for six hours in an eight-hour workday.  (T. at 19).  This clearly

indicates that the limitations were considered.  Additionally, even though the ALJ considered the

examining physicians' physical limitations, the medical records nevertheless demonstrate that

Plaintiff's obesity was not severe as it did not significantly limit her ability to do work related

activities.  Plaintiff stated she had been heavy for her "whole life" but was able to work at several

jobs involving heavy lifting prior to her alleged back problems.  (T. at 213, 215.)  She also stated

that she was able to care for two young foster children, ages two and fourteen months, and do

most of her activities of daily living, though with some activities she needed help.  (T. at 217-21.)

Therefore, because the ALJ's decision adopted the physical limitations suggested by reviewing

doctors after examining Plaintiff who found that obesity was not a severe impairment, the ALJ's

10

failure to specifically address her obesity does not warrant a remand.

    **B.**    **Whether the ALJ Erred in Determining That the Plaintiff Was Capable of a Full Range of Sedentary Work[4] and That the Opinion of Plaintiff's Treating Physician Regarding Plaintiff's RFC Was Entitled to Little Weight[5]**

As noted previously, the ALJ found that Plaintiff was able to sit up to six hours in an eight-hour workday, stand and/or walk for two hours in an eight-hour workday, and occasionally lift, carry, push and pull objects weighing up to ten pounds.  (T. at 19.)  In determining this RFC, the ALJ gave great weight to Dr. Porcari's opinion of July 3, 2003, as well as Dr. Matan's report of June 13, 2002, but gave little weight to Dr. Porcari's physical medical source statement.  (T. at 18).  Plaintiff argues the medical source statement was consistent with the record and establishes that she cannot perform a full range of sedentary work.

The medical opinions of a treating physician[6] are to be given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. § 404.1527(d)(2) (2005).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the

---

    [4] Sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

    [5] Because of the interrelatedness of Plaintiff's second and third claims, (*see* I.B. above), they are being addressed together.

    [6] "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. §§ 404.1502 & 416.902 (2005).

Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts.  Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion."  *Id.*  These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2) (2005).

As previously stated, Dr. Matan's report of June 2002 stated that Plaintiff should be restricted to lifting no more than thirty pounds.  (T. at 172.)  He noted, however, that he thought Plaintiff should return to work even though she was interested in being listed as disabled from work.  (T. at 172.)  This examination also revealed that she was able to walk with no evidence of ataxia or foot drop and that she had 5/5 motor strength throughout the "bilateral extensor hallucis longus, tibialis anterior and gastroc nemius."  (T. at 172.)  Then on July 3, 2003, Dr. Porcari noted that an MRI revealed disc herniation in the L5-S1 region and that Plaintiff opted for

conservative treatment consisting of epidural steroid injections.  (T. 170.)  Dr. Porcari stated that

because of the back pain, Plaintiff's physical activities should be restricted to lifting no more

than thirty pounds, she should not stand for a prolonged period, and she should not push or pull

heavy objects.  (T. at 170.)  This was, in essence, consistent with the restrictions instituted by Dr.

Matan as well as a state consultative examiner, Dr. Myra Shayevitz.  Dr. Shayevitz indicated that

Plaintiff would have difficulty sitting for prolonged hours, she had limitations in standing,

walking, and stair climbing, and she could lift something very light.  (T. 132.)

　　　　While the ALJ found that those restrictions were consistent with the record, the ALJ

determined that the physical medical source statement rendered by Dr. Porcari was inconsistent

with the record.  As noted previously, Dr. Porcari found in that report that Plaintiff could sit for

four hours in an eight-hour workday, stand and/or walk for less than two hours in an eight-hour

workday, and lift up to twenty pounds.  (T. at 188-92.)  In addition, Dr. Porcari stated that

Plaintiff could occasionally climb stairs, rarely twist, stoop, or crouch, and never climb ladders.

(T. at 191.)  It was also noted that as a result of Plaintiff's impairments, she would be absent

more than four days per month.  (*Id.*)  Despite this assessment, the following medical records

indicate that Plaintiff's condition was not so severe as to necessitate such restrictions.

　　　　On August 14, 2001, Dr. Sudhir Guthikonda reviewed an image of Plaintiff's lumbar

spine and found that there was normal vertebral body height and alignment, disc paces were

intact, facet joints were unremarkable, no bony destructive process was evident, and

paravertebral soft tissues revealed no abnormalities.  (T. at 114.)  However, on September 28,

2001, Dr. Stephen Joy noted that there was an annular bulge and small disc herniation in the L5-

S1 region.  (T. at 112.)  Thereafter, on November 6, 2001, Dr. Shayevitz evaluated Plaintiff and

noted that she was able to cook, clean, and do laundry on occasion, bathe and dress herself,

watch television, go out, listen to the radio, and read.  (T. at 130-31.)  Dr. Shayevitz found that

flexion and extension of the lumbar spine was limited but there was full rotary movements

bilaterally, there was no SI joint or sciatic notch tenderness or spasm, and straight leg raise on the

right was negative, though it was positive on the left at forty degrees.  (T. at 131-32.)  She further

noted that gait and station were normal, squat was full, she needed no help getting on and off the

examining table, and she could rise from a chair without difficulty.  (T. at 131.)  Then, on the

same day, x-rays taken of Plaintiff's lumbar sacral spine revealed that vertebral body heights and

disc spaces were maintained and there was no spondylolisthesis, spondylolysis, or osteophytosis.

(T. at 133.)

A few days later, on November 21, 2001, Dr. Richard Finley with the New York State

Department of Family Assistance Office of Temporary and Disability Assistance evaluated

Plaintiff's case.  (T. at 139.)  He noted that she walked normally, had no lumbar paraspinal

muscle spasm, had normal strength in the "LEs," deep tendon reflexes were absent bilaterally,

but there was some limitation in flexion and decreased sensation on the right.  (*Id.*)  Dr. Finley

stated that the clinical findings were modest and the nature of the treatment Plaintiff received

brought into question the severity of her pain.  (*Id.*)  He concluded that the spinal disc disease

and obesity were compatible with an ability to do light work.[7]  (*Id.*)

---

[7]  Light work is defined by the CFR as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the weight
> lifted may be very little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting most of the time
> with some pushing and pulling of arm or leg controls.  To be considered
> capable of performing a full or wide range of light work, you must have

Subsequently, on December 5, 2001, Dr. Matan found that Plaintiff had full range of motion of the lumbar spine, she was able to toe and heel walk, she had 5/5 motor strength throughout both lower extremities, and there was normal sensation, no evidence of long tract signs, and negative tension signs.  (T. 156.)  He further stated she had full range of motion of her hips and knees and normal deep tendon reflexes of both quadriceps and Achilles.  (*Id.*)  He recommended therapy and that she should return to work.  (T. at 156-57.)  Then, as discussed previously, on January 17, 2002, a state agency consultant found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and sit for six hours in an eight-hour workday, and push or pull unlimitedly.  (T. 163.)  The consultant further opined that Plaintiff had occasional postural limitations but no manipulative, visual, communicative, nor environmental limitations.  (T. at 164-66.)  It was concluded that Plaintiff had the RFC to perform light work.  (T. 168.)

After a few months, on June 13, 2002, Dr. Matan wrote a letter to Dr. Porcari stating that while there may be mild to moderate disc herniation at L5-S1, Plaintiff had no neurological deficits, neurological problems, or complaints referable to the nerve root.  (T. at 171.)  He stated that surgery would not be a viable option, that he referred her to a pain management center, and that he again recommended that she should work.  (*Id.*)  Thereafter, Plaintiff opted for several steroid injections in 2002 into 2003 to alleviate her pain.  (T. at 175-77.)

Based on this medical evidence, it is clear that the restrictions placed upon Plaintiff's ability to do work-related activities in Dr. Porcari's physical medical source statement of July 3,

---

the ability to do substantially all of these activities.
20 C.F.R. §§ 404.1567(b) & 416.967(b) (2005).

2003 were not consistent with the majority of findings made by other doctors and consultants.

Furthermore, despite Dr. Porcari's length, frequency, nature, and extent of treatment relationship

with Plaintiff, he rarely treated and discussed Plaintiff's back issues.  (*See* T. at 115-22, 124-29,

180-87.)  Instead, the majority of Plaintiff's examinations concerned other ailments.  (*See id.*)

Therefore, the ALJ did not err in according Dr. Porcari's physical medical source statement little

weight.

      Intertwined with Plaintiff's argument that the ALJ erred in assigning little weight to Dr.

Porcari's opinion, she further claims that the ALJ erred by finding she could perform the full

range of sedentary work.  Plaintiff first asserts, however, that the ALJ did not properly assess

Plaintiff's limitations on a function-by-function basis.

      An "RFC assessment must first identify the individual's functional limitations or

restrictions and assess his or her work-related abilities on a function-by-function basis, including

the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945.  Only after

that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium,

heavy, and very heavy."  S.S.R. 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI:  Assessing*

*Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r*

*of Soc. Sec.*, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).

      In this case, the ALJ stated that

> the claimant can sit for up to 6 hours or stand/walk for up to and
> including 2 hours in an 8-hour workday, and she can
> lift/carry/push/pull objects weighing up to and including 10 pounds
> occasionally (up to 1/3 of the time) or up to a negligible amount of
> weight frequently (from 1/3 to 2/3 of the time).  Thus, the medical
> evidence establishes that she has the "residual functional capacity"
> to perform, at least, the "strength" demands (sitting, standing,

walking, lifting, carrying, pushing and pulling) of sedentary work.

(T. at 19.)  Despite the fact that the ALJ did in fact describe the functional limitations prior to expressing the level of work Plaintiff could perform, Plaintiff complains that the ALJ improperly grouped the functional limitations together (*i.e.*, stand/walk and lift/carry/push/pull) instead of stating them individually.  Although Social Security Ruling 96-8p denotes that they should be considered separately even if the final RFC assessment combines activities, the reasoning behind this is that "it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately."  S.S.R. 96-8p, 1996 WL 374184, at *5.

Here, treating the activities separately would not have changed the result of the RFC determination.  Ruling 96-8p describes the importance of considering the limitations individually in determining whether a claimant can perform her past relevant work.  *Id.*  The ALJ made the determination, based on this RFC analysis, that Plaintiff could not perform her past relevant work because the strength demands were much higher than that found in the sedentary level.  Thus, the outcome of the ALJ's findings would not have differed had they been considered separately instead of together.

In specifically addressing the RFC determination made by the ALJ, the medical evidence in the record supports the ALJ's findings that Plaintiff could perform a full range of sedentary work.  As thoroughly discussed above, both Drs. Matan and Porcari found Plaintiff could lift no more than thirty pounds, which conforms to the ability to do light work.  (T. at 170, 172); *see supra* note 7.  Even Dr. Finley and the other state consultant found that Plaintiff could perform light work.  (T. 139, 168.)  As described earlier, the state consultant stated that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk,

17

and sit for six hours in an eight-hour workday, and push or pull unlimitedly.  (T. 163.)  Drs.

Porcari and Shayevitz noted that Plaintiff was even more restricted in her ability to sit, stand, and

walk, which the ALJ clearly took into account in determining her RFC.  (*See* T. 132, 170.)

However, as discussed above, the objective medical evidence demonstrated that the restrictive

nature of Dr. Porcari's physical medical source statement was inconsistent with the record as a

whole.  (*Compare* T. at 188-92 *with* 112, 114, 131-33, 139, 156-57, 171-72).

Additionally, Plaintiff's own testimony at the hearing corroborates the ALJ's conclusions

as to her RFC.  Plaintiff described how she cares for her two, very young foster children and that

she gives them bottles, puts them in high chairs, gets them dressed, changes diapers, and keeps

the house clean for them.  (T. at 217-19).  She also stated that she drives, goes shopping on

occasion, and visits her parents.  (T. at 219-20).  Thus, the ALJ clearly factored all of the medical

evidence and hearing testimony into his finding that Plaintiff could perform sedentary work.

Accordingly, based upon the evidence in the record, the ALJ's decision regarding the

weight to be given to Dr. Porcari's opinion as well as the evaluation of Plaintiff's RFC is

supported by substantial evidence and the ALJ applied the correct legal standards.

### D.     Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were Not Credible

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must

set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5

(S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility

assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. §

404.1529 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5

(N.D.N.Y. Mar. 3, 1998).  First, the ALJ must determine, based upon the claimant's objective

medical evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a) (2005).  Second, if the

medical evidence alone establishes the existence of such impairments, then the ALJ need only

evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the

extent to which they limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or

limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's

subjective complaints by considering the record in light of the following symptom-related

factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of

claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness,

and side effects of any medication taken to relieve symptoms; (5) other treatment received to

relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other

factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R.

§ 404.1529(c)(3) (2005).  An ALJ's evaluation of a plaintiff's credibility is entitled to great

deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003

U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp.

2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS

11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a

claimant's credibility . . . and such findings are entitled to deference because the ALJ had the

opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In his decision, the ALJ stated that Plaintiff's testimony regarding the intensity,

persistence, and functionally limiting effects of her symptoms was not corroborated by the

objective medical evidence and was inconsistent with the record.  (T. at 19.)  Since the ALJ

found that Plaintiff's allegations of her limitations were not fully credible (*id.*), it was incumbent

on the ALJ to then assess the factors set forth in 20 C.F.R. § 404.1529(c).

In this case, the ALJ reviewed and discussed the medications Plaintiff took, the treatment

she received, her symptoms, daily activities, and measures taken to relieve the symptoms.  (T. at

19.)  The ALJ noted that her use of routine pain medication was sparse, there had been no back

surgery, and physical therapy was not required after the receipt of the four epidural steroid

injections.  (*Id.*)  He also noted that there was improvement after only two of the injections and

there was no further significant medical treatment.  (*Id.*)  The ALJ further described Plaintiff's

testimony that she could not sit, stand, or walk for a prolonged period but that the medical

evidence showed that her back problem was without neural structure compromise and there was

no evidence of neurological deficits.  (*Id.*)  The ALJ commented that Plaintiff was very interested

in being disabled from work but that Dr. Matan felt that she should return to work.  (*Id.*)  In

regards to activities of daily living, the ALJ indicated that while Plaintiff's back impairment

caused some discomfort, it did not preclude her from engaging in normal daily activities with her

two foster children.  (*Id.*)

The conclusions reached and statements made by the ALJ are confirmed by the evidence

in the record.  (*See* V. A & B above.)  As noted previously, Dr. Porcari only discussed Plaintiff's

back problems twice in twenty-two office visits. (*See* T. 115-22, 124-29, 180-87.) Furthermore, Dr. Matan stated that Plaintiff should return to work and that her only restriction was not to lift anything over thirty pounds. (T. at 172). He also indicated that she had full range of motion of her lumbar spine and that she had 5/5 motor strength in her lower extremities. (T. at 156, 172). Additionally, Dr. Shayevitz noted that Plaintiff could do many daily activities and that she could fully squat, she needed no help getting on and off the examining table, and she could rise from her chair without difficulty. (T. at 131.) Moreover, two state agency consultants found that Plaintiff could perform light work. (T. at 139, 168). Plaintiff's credibility argument is further belied by her own testimony wherein she stated that she gives her two foster children bottles, puts them in high chairs, gets them dressed, changes diapers, and keeps the house clean for them. (T. at 217-19). Plaintiff also testified that she drives, goes shopping on occasion, and visits her parents. (T. at 219-20).

Thus, based upon the records as well as testimony during the hearing, the ALJ's conclusion that Plaintiff's testimony was not fully credible is supported by substantial evidence. The ALJ properly considered the factors set forth in 20 C.F.R. § 404.1529(c) as well as the medical findings in conjunction with Plaintiff's statements of her subjective symptoms. Therefore, the Court recommends that the ALJ's decision regarding Plaintiff's credibility be affirmed.

**E.      Whether the Commissioner Met His Burden of Proof at Step 5 of the Sequential Analysis in Relying Solely on the Grids to Make a Finding that the Plaintiff was Not Disabled**

Plaintiff argues that the ALJ erred in applying the Medical Vocational Guidelines instead of consulting a vocational expert because Plaintiff suffers from non-exertional impairments that

impose significant limitations.  (Dkt. No. 5 at 16.)

In order to make the determination under the fifth step of the sequential analysis described above, the Commissioner ordinarily uses the Medical Vocational Guidelines, known as the "Grid":

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process . . . , the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 . . . . The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.  Generally the result listed in the Grid is dispositive on the issue of disability.

*Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (footnotes omitted): *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  The Grid classifies work into five categories based on the exertional requirements of different occupations.  The Grid divides work into sedentary, light, medium, heavy and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull.  *Zorilla*, 915 F. Supp at 667 n.2; *see also* 20 C.F.R. §§ 404.1567(a) & 416.967(a).

The ability to perform a particular category of work is referred to as residual functional capacity.  Each exertional category of work has its own Grid.  The Grid yields a decision of "disabled" or "not disabled," taking into account the claimant's RFC, age, education, and prior work experience.  20 C.F.R. §§ 404.1569, Subpt. P, App. 2, § 200.00(c), & 416.969.  Where there are "discrepancies" between the claimant's abilities and the Grid factors, where the claimant's exertional impairments are compounded by significant non-exertional impairments[8]

---

[8]  Non-exertional limitations refer to limitations affecting the claimant's ability to meet the requirements of a job other than strength demands.  20 C.F.R. § 404.1569a(c).  This includes, *inter alia*,

that limit the range of work an individual can perform, or where there is no substantial evidence

that a claimant can perform the full range of a particular category of work, then the relevant facts

are to be considered in light of the vocational considerations outlined in the Code of Federal

Regulations at 20 C.F.R. §§ 404.1569(a) & 416.969(a).  If a claimant cannot perform the full

range of an exertional category of work, then an individual assessment may be required.  *Zorilla*,

915 F. Supp at 667 (citing *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).

> Here, taking into account Plaintiff's age, education, prior work experience, and RFC, the

ALJ determined, utilizing the Grids, that Plaintiff could perform essentially all of the unskilled

occupations at the sedentary level.  (T. at 20-21.)  Thus, based on Rules 201.27 and 201.28, the

Grids directed a finding of not disabled.  (*Id.*)  The ALJ found that limitations other than

exertional limitations did not significantly affect her ability to perform work activities.  (T. at

20.)

> In this case, the ALJ did not err by using the Grids.  The state agency consultant found

that Plaintiff had only occasional postural limitations.  (T. at 164.)  Dr. Porcari also found that

she could occasionally climb stairs, though he concluded she could rarely twist, stoop, or crouch.

(T. at 191.)  However, Plaintiff's testimony regarding the care of her foster children was

inconsistent with the assessment that she could rarely twist, stoop, or crouch.  (*See* T. at 217-20).

Moreover, Dr. Shayevitz stated Plaintiff was able to bathe and dress herself, her squat was full,

---

limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention
or concentration, understanding or remembering detailed instructions, and performing manipulative or
postural functions such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id.*; *see also*
S.S.R. 83-14, 1983 WL 31254, at *1, *Program Policy Statement–Titles II and XVI: Capability to do
Other Work – The Medical Vocational Rules as a Framework for Evaluating a Combination of
Exertional and Nonexertional Impairments* (S.S.A. 1983).

she could rise from a chair without difficulty, and she needed no help getting on and off the

examination table.  (T. at 130-31.)  Drs. Finley and Matan further noted that Plaintiff walked

normally.  (T. at 139, 156, 172.)  Additionally, Dr. Matan noted that she had full range of motion

of the lumbar spine and 5/5 motor strength in her lower extremities.  (T. at 156, 172.)  This

evidence is indicative of the fact that Plaintiff's non-exertional impairments are not severe and do

not significantly limit her ability to do work-related activities.  There is also substantial evidence

to support the ALJ's finding that the full range of sedentary work could be performed.

Accordingly, it is recommended that the ALJ's decision to solely use the Grids to determine that

Plaintiff was not disabled be affirmed.

     **WHEREFORE,** it is hereby

     **RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the

complaint (Dkt. No. 1) be **DISMISSED**.

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 72, 6(a), 6(e).

Dated: January 8, 2008
     Syracuse, New York

George H. Lowe
United States Magistrate Judge