UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE MARTIN,

                            **Plaintiff,**

                v.                                    5:05-CV-72
                                                             (FJS/GHL)

**MICHAEL J. ASTRUE,** Commissioner of
Social Security,

                            **Defendant.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**OLINKSY & SHURTLIFF, LLP**          **HOWARD OLINSKY, ESQ.**
300 South State Street, 5th Floor          **JAYA SHURTLIFF, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
and Courthouse
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Currently before the Court are Magistrate Judge Lowe's Report and Recommendation and Plaintiff's objections thereto.

## II. BACKGROUND

On October 30, 2001, Plaintiff filed an application for Supplemental Security Income ("SSI") and disability insurance benefits, alleging disability due to a herniated and bulging disc in the L5-S1 region. *See* Administrative Record ("Tr.") at 66-68. Defendant initially denied Plaintiff's application. *See id.* at 23-28. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on July 8, 2003. *See id.* at 29, 207-27. On October 14, 2003, the ALJ issued a decision, holding that Plaintiff was not disabled. *See id.* at 16-22. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 13, 2004. *See id.* at 6-8

Plaintiff commenced this action on January 21, 2005, seeking judicial review of Defendant's final decision. *See* Dkt. No. 1. Plaintiff argued that the ALJ erred in the following respects: (1) in determining that Plaintiff's obesity was not a severe impairment; (2) in determining that Plaintiff was capable of sedentary work; (3) in failing to give controlling weight to the opinion of a treating source; (4) in finding that Plaintiff's subjective complaints were only partially credible; and (5) in solely using the Medical Vocational Guidelines ("Grids") to determine that Plaintiff was not disabled when non-exertional impairments existed. *See generally* Dkt. No. 5.

After reviewing the ALJ's decision in light of Plaintiff's objections, Magistrate Judge Lowe recommended that this Court affirm Defendant's decision and dismiss the complaint. *See* Dkt. No. 8 at 24.

Plaintiff objects to Magistrate Judge Lowe's Report and Recommendation. First, Plaintiff claims that Magistrate Judge Lowe erred by not holding the ALJ to the appropriate legal

standards set forth in Social Security Ruling ("SSR") 02-1p in evaluating Plaintiff's obesity at steps two through five of the five-step sequential evaluation process. *See* Plaintiff's Objections at 1-3. Moreover, Plaintiff contends that Magistrate Judge Lowe failed to hold the ALJ to the appropriate legal standard applicable to the treating physician rule. *See id.* at 3-4.

### III. DISCUSSION

**A.    Standard of review**

In reviewing a Commissioner's final decision, a district court must determine if the Commissioner applied the correct legal standards and if there is substantial evidence in the record to support that decision. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). However, a reviewing court may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards even if there is substantial evidence in the record to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether substantial evidence exists in the record to support the decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence is more than a mere scintilla[;] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Furthermore, a court may not substitute its interpretation of the administrative record for that of the Commissioner if the substantial evidence in the record supports the Commissioner's decision. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999).

Moreover, in a case in which a magistrate judge issues a Report and Recommendation

and a party properly files objections to that report, "the district court shall make a *de novo* determination of those portions of the report to which the objections are made." 28 U.S.C. § 636(b)(1)(C). The district court shall also review for clear error those portions of the report to which neither party objects. *See Turley v. Britton*, No. 9:03-CV-1425, 2007 WL 625983, *2 (N.D.N.Y. Feb. 24, 2007); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").

**B.     Disability determination**

Individuals seeking disability insurance or SSI benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Additionally, "for the purposes just stated," individuals are disabled if their physical or mental impairments are so severe that they cannot perform their previous work and they cannot engage in "any other kind of substantial work which exists in the national economy" considering their "age, education, and work experience." 42 U.S.C. § 1382c(a)(3)(B).

In assessing the validity of an individual's disability claim, the Commissioner uses a five-step sequential evaluation process in which

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical

> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [RFC] to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. . . .

*Shaw*, 221 F.3d at 132 (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The claimant bears the burden of proof on the first four steps, while the Commissioner has the burden on the last step. *See Shaw*, 221 F.3d at 132. Finally, "[i]f at any step a finding of disability or nondisability can be made, [the Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C.  Obesity as a severe impairment

Plaintiff asserts that Magistrate Judge Lowe erred in excusing the ALJ from applying the legal standards set forth in SSR 02-1p. *See* Plaintiff's Objections at 1. According to Plaintiff, SSR 02-1p requires that an ALJ evaluate a claimant's obesity as a medically determinable impairment and evaluate the effects of a claimant's obesity alone and in combination with a claimant's other impairments. *See* Plaintiff's Objections at 2. Plaintiff asserts that the ALJ failed

to follow SSR 02-1p's mandate and, therefore, failed to apply the appropriate legal standard. *See id.* at 3. Finally, Plaintiff contends that Magistrate Judge Lowe's acknowledgment that the ALJ did not explicitly address Plaintiff's obesity demonstrates that he excused the ALJ from applying SSR 02-1p's mandate and that, therefore, the Court should not adopt his recommendation upholding the ALJ's decision. *See id.*

"Obesity is not in and of itself a disability." *Guadalupe v. Barnhart*, No. 04 CV 7644, 2005 WL 2033380, *6 (S.D.N.Y. Aug. 24, 2005) (citing Social Security Ruling ("SSR") 02-1p). However, SSR 02-1p does provide that a Listing is met "if there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2000 WL 628049, *5 (2002). Nonetheless, "an ALJ is not obligated to single out a claimant's obesity for discussion in all cases." *Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, *6 (N.D.N.Y. Jan. 31, 2008) (citing *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (citing *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005))). Rather, as "'[t]hose circuits which have recently commented on this complaint [that the ALJ did not explicitly consider the claimant's obesity] have held[,] . . . an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.'" *Id.* (quoting *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) & *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004))) (other citation omitted).

In his Report and Recommendation, Magistrate Judge Lowe noted that, "[a]lthough the ALJ did not explicitly address Plaintiff's obesity, the ALJ utilized the physical limitations set

forth by the treating physicians taken in conjunction with that from the state agency consultant [, Dr. Maya Shayevitz]." *See* Report and Recommendation at 10 (citing Tr. at 17-19).  Magistrate Judge Lowe further noted that "the ALJ [specifically] found that Plaintiff could not lift more than ten pounds occasionally and she could only stand and/or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday.  (T. at 19).  This clearly indicates that the limitations were considered." *See id.*  Therefore, Magistrate Judge Lowe concluded that, "because the ALJ's decision adopted the physical limitations suggested by the reviewing doctors after examining Plaintiff who found that obesity was not a severe impairment, the ALJ's failure to specifically address her obesity does not warrant a remand." *See id.* at 10-11.

After reviewing the entire record, the Court concludes that Magistrate Judge Lowe did, in fact, hold the ALJ to the requirements of SSR 2-1p, as the courts have interpreted those requirements, regarding the assessment of Plaintiff's obesity.  Therefore, the Court adopts his conclusion that the ALJ's failure to specifically address Plaintiff's obesity does not warrant a remand.

### D.    The treating physician rule

Plaintiff contends that Magistrate Judge Lowe failed to hold the ALJ to the treating physician rule with respect to the inconsistency that the ALJ found between Dr. Porcari's medical source statement and the record.  *See* Plaintiff's Objections at 3.  Plaintiff argues that, under the treating physician rule, the ALJ was required to contact Dr. Porcari for clarification and that, because he did not do so, Magistrate Judge Lowe should not have upheld the ALJ's decision.  *See id.*

Under the Regulations, an ALJ must give a treating physician's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The treating physician rule "recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to 'provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings' as opposed to an evaluation of a one-time non-examining, non-treating physician." *Yablonski*, 2008 WL 2157129, at *10 (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)) (other citation omitted).

However, if the ALJ does not afford the claimant's treating physician's opinion controlling weight because it is inconsistent with other substantial evidence in the record, he must consider other factors to determine how much weight to give that opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). These factors include (1) the length of the treatment relationship and frequency of examinations, (2) the nature and extent of treatment relationship, (3) the medical evidence in support of the opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion is that of a specialist, and (6) any other factors that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d)(2).

In his June 2002 report, Dr. Matan, one of Plaintiff's treating physicians, stated that Plaintiff should be restricted to lifting no more than thirty pounds. *See* Tr. at 172. Dr. Matan's examination also revealed that she was able to walk with no evidence of ataxia or foot drop and that she had 5/5 motor strength throughout the "bilateral extensor hallucis longus, tibialis interior and gastroc nemius." *See id.* Finally, based upon his examination of Plaintiff, he concluded that

Plaintiff should return to work even though she was interested in being listed as disabled from work. *See id.*

On July 3, 2003, Dr. Porcari, another one of Plaintiff's treating physicians, noted that an MRI revealed disc herniation in the L5-S1 region and that Plaintiff had opted for conservative treatment consisting of epidural steroid injections. *See* Tr. at 170. Dr. Porcari opined that, because of her back pain, Plaintiff's physical activities should be restricted to lifting no more than thirty pounds, she should not stand for a prolonged period, and she should not push or pull heavy objects. *See* Tr. at 170.

In addition, Dr. Sudhir Guthikonda reviewed an image of Plaintiff's lumbar spine on August 14, 2001, and found that there was normal vertebral body height and alignment, disc paces were intact, facet joints were unremarkable, no bony destructive process was evident, and paravertebral soft tissues revealed no abnormalities. *See* Tr. at 114. Approximately one month later, on September 28, 2001, Dr. Stephen Joy noted that there was an annular bulge and small disc herniation in the L5-S1 region. *See id.* at 112.

On November 6, 2001, Dr. Shayevitz evaluated Plaintiff and noted that she could cook, clean, and do laundry on occasion, bathe and dress herself, watch television, go out, listen to the radio, and read. *See id.* at 130-31. She also found that Plaintiff's flexion and extension of the lumbar spine were limited but that she had full rotary movements bilaterally, had no SI joint or sciatic notch tenderness or spasm, had negative straight leg raise on the right, although it was positive on the left at forty degrees. *See id* at 131-32. Dr. Shayevitz further noted that Plaintiff's gait and station were normal, that her squat was full, that she needed no help getting on and off the examining table, and that she could rise from a chair without difficulty. *See id.* at 131. On

the same day, x-rays of Plaintiff's lumbar sacral spine revealed that her vertebral body heights and disc spaces were maintained and that there was no spondylolisthesis, spondylolysis, or osteophytosis. *See id.* at 133.

On November 21, 2001, Dr. Richard Finley with the New York State Department of Family Assistance Office of Temporary and Disability Assistance evaluated Plaintiff's case. *See* Tr. at 139. He noted that Plaintiff walked normally, had no lumbar paraspinal muscle spasm, had normal strength in the "LEs," and that her deep tendon reflexes were absent bilaterally. *See id.* However, he also noted that Plaintiff had some limitation in flexion and decreased sensation on the right. *See id.* In addition, Dr. Finley stated that the clinical findings were modest and that the nature of the treatment that Plaintiff received brought into question the severity of her pain. *See id.* Based upon his review, he concluded that Plaintiff's spinal disc disease and obesity were compatible with an ability to do light work. *See id.*

Shortly thereafter, on December 5, 2001, Dr. Matan found that Plaintiff had full range of motion of the lumbar spine, was able to toe and heel walk, had 5/5 motor strength throughout both lower extremities, and had normal sensation, no evidence of long tract signs, and negative tension signs. *See* Tr. at 156. He further stated that Plaintiff had full range of motion of her hips and knees and normal deep tendon reflexes of both quadriceps and Achilles. *See id.* He recommended therapy and that she should return to work. *See id.* at 156-57.

On January 17, 2002, a state agency consultant found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and sit for six hours in an eight-hour workday, and push or pull without limit. *See id.* at 163. The consultant also opined that Plaintiff had occasional postural limitations but no manipulative, visual,

communicative, or environmental limitations; and he concluded that Plaintiff had the RFC to perform light work. *See id.* at 164-66, 168.

Finally, on June 13, 2002, Dr. Matan wrote a letter to Dr. Porcari, in which he stated that, although Plaintiff might have mild to moderate disc herniation at L5-S1, she had no neurological deficits, neurological problems, or complaints referable to the nerve root. *See* Tr. at 171. He stated that surgery was not a viable option, that he had referred her to a pain management center, and that he recommended that she should work. *See id.* Thereafter, Plaintiff had several steroid injections in 2002 and 2003 to alleviate her pain. *See id.* at 175-77.

After reviewing all of this medical evidence, the ALJ noted that, although a treating source's medical opinions are usually given controlling weight, this is not the case if those opinions are inconsistent with the other substantial evidence in the record or if they are not supported by medically acceptable clinical or diagnostic data. *See* Tr. at 18. He explained further that "controlling weight is not given if the opinion is inconsistent with the other substantial evidence in the case record or if not supported by medically acceptable clinical or diagnostic data. SSR 96-2p. The less consistent that opinion is with the record as a whole, the less weight it will be given. 20 C.F.R. § 404.1527(d)(4)" *See id.* Finally, the ALJ stated that "[t]he weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements." *See id.* (citing Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)).

Applying these legal principles to the record, the ALJ concluded that

> Dr. Porcari's medical opinion reported on July 3, 2003 is consistent with Dr. Matan's medical opinion of June 13, 2002, in that they establish that the claimant cannot lift over 30 pounds or do prolonged standing (Exhibit 13F and Exhibit 14F). Accordingly, those medical opinions are given great weight. Less weight is

> given to Dr. Porcari's opinions expressed in a "form," which was checked to indicate that the claimant can walk less than 1 block, stand/walk less than 2 hours and sit about 4 hours etc. (Exhibit 17F).
>
> "Form" reports, in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best and their reliability is suspect. Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir. 1993). In one case, a treating physician's "statement" which merely consisted of a mark on a checklist was found not to provide support for the claimant's complaints of "shooting pains" or numbness, nor did it contain specific findings supporting the claimant's assertions of marked difficulty standing, walking or using her hands. St. Clair v. Chater, 963 F. Supp. 984, 990 (D. Kan. 1997).

See Tr. at 18-19.

Although Plaintiff argues otherwise, the ALJ correctly applied the treating physician rule and carefully reviewed Dr. Porcari's medical findings. He also took pains to explain why he gave Dr. Porcari's more detailed examination notes significant weight and why he gave Dr. Porcari's "form" report less weight. It is also clear that, to the extent that the ALJ did not give all of Dr. Porcari's records controlling weight, he weighed the relevant factors and explained his reasons for not doing so in light of those factors.

Accordingly, for all of these reasons, the Court concludes that the ALJ's review of the medical records complied with SSR 96-2p's requirements; and, therefore, the Court adopts Magistrate Judge Lowe's conclusion that the ALJ properly applied the treating physician rule.

## IV. CONCLUSION

Accordingly, after considering the entire record in this case, Magistrate Judge Lowe's Report and Recommendation, and Plaintiff's objections thereto, as well as the applicable law, the

Court hereby

**ORDERS** that Magistrate Judge Lowe's January 8, 2008 Report and Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 9, 2008
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge